UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                                                               Case # 24-CR-6081-FPG

v.

                                                                              DECISION AND ORDER

ELIJAH W. ADAMS,

                                            Defendant.
_____

## INTRODUCTION

On December 19, 2024, Defendant Elijah W. Adams was indicted on five counts: (1) possession of 10 grams or more of para-flourofentanyl with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); (2) possession of fentanyl with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); (3) possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); (4) possession of a firearm in furtherance of drug trafficking crimes in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (5) felon in possession of firearms and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). ECF No. 29. By Order dated January 8, 2025, this case was referred to United States Magistrate Judge Colleen D. Holland pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (b)(1)(B). ECF No. 34.

On February 14, 2025, Defendant filed an omnibus motion. ECF No. 35. As relevant here, in that motion, he moved to (1) dismiss the indictment, (2) suppress physical evidence, and (3) suppress statements made to law enforcement. *See* ECF No. 35. Judge Holland filed a Report & Recommendation ("R&R"), ECF No. 50, recommending the denial of Defendant's motion to dismiss the indictment and motion to suppress physical evidence. *See* ECF No. 50. She also recommended that his motion to suppress statements given to law enforcement be granted in part and denied in part. *See id.*

1

Defendant has filed his objections to the R&R, ECF No. 52, and the Government has responded, ECF No. 54. For the reasons that follow, the R&R is ADOPTED in full. Defendant's motions to dismiss the indictment and suppress physical evidence are DENIED. And Defendant's motion to suppress statements is GRANTED IN PART AND DENIED IN PART.

## LEGAL STANDARD

A district court reviews those portions of an R&R to which a party has timely objected *de novo*. Fed. R. Crim. P. 59(b)(3). When a party does not object to a portion of an R&R, or when the objections are conclusory, general, or without legal support, a district court reviews those portions for clear error. *See United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009).

After reviewing the R&R and the objections thereto, a district court "may accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3). "As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of that point." *United States v. Willis*, No. 13-CR-6013, 2015 WL 1915123, at *2 (W.D.N.Y. Apr. 27, 2015); *see also* Fed. R. Crim. P. 59. ("Failure to object in accordance with this rule waives a party's right to review.").

## DISCUSSION

The R&R contains a thorough description of the relevant facts in this case, and therefore, familiarity with the factual background is assumed.

Neither party objects to Judge Holland's recommendation to deny Defendant's motion to dismiss the indictment. *See* ECF Nos. 52, 54. However, Defendant objects to Judge Holland's recommendation to deny his motion to suppress physical evidence and her recommendation that his motion to suppress statements be denied in part. ECF No. 52. The Court discusses each motion below.

I. **Motion to Dismiss the Indictment**

Because neither party objected to Judge Holland's recommendation to deny the motion to dismiss the indictment, the Court reviews the R&R's finding on this matter for clear error. *See Preston*, 635 F. Supp. 2d at 269. Based upon such a review, the Court finds no clear error in Judge Holland's denial of Defendant's motion to dismiss the indictment and therefore, ADOPTS Judge Holland's recommendation to deny the motion.

II. **Motion to Suppress Evidence**

Defendant objects to Judge Holland's recommendation to deny his motion to suppress physical evidence and seeks to preclude evidence collected pursuant to search warrants executed at 421/423 Murray Street ("Murray Street") and 656 Jefferson Avenue ("Jefferson Avenue").[1] ECF No. 52 at 1. Defendant argues that Judge Holland erroneously found that Defendant lacks standing to suppress the evidence obtained at Murray Street. *Id.* He also argues that Judge Holland erroneously found that the search warrants for Murray Street and Jefferson Avenue were supported by probable cause. *Id.* The government maintains its opposition to Judge Holland's determination that Defendant has standing to suppress the evidence found at Jefferson Avenue. ECF No. 54 at 2. The Court discusses all of these arguments below.

   a. **Standing**

To have standing to bring a motion to suppress evidence under the Fourth Amendment, a defendant must demonstrate that the allegedly illegal conduct infringed upon his personal constitutional rights. *See United States v. Padilla*, 508 U.S. 77, 81 (1993); *Rakas v. Illinois*, 439

---

[1] As a part of his motion to suppress, Defendant requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). *See* ECF No. 35-8 at 2–3. Judge Holland recommended the denial of that request. ECF No. 50 at 20. Neither party objected to that recommendation, and therefore Court reviews the R&R's finding on this matter for clear error. *See Preston*, 635 F. Supp. 2d at 269. Based upon such a review, the Court finds no clear error in Judge Holland's denial of Defendant's request for a *Franks* hearing.

U.S. 128, 131 n.1, 134 (1978). The law is well-settled that a defendant seeking to suppress evidence must demonstrate by a preponderance of the evidence that he had a reasonable expectation of privacy in the location or items searched. *Rakas*, 439 U.S. at 143; *United States v. Perea*, 986 F.2d 633, 639 (2d Cir. 1993); *United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991). The standing inquiry involves two separate, but related inquiries. First, a defendant must have a subjective expectation of privacy in the searched location, and second, that expectation of privacy must be one that society accepts as reasonable. *See, e.g., United States v. Hamilton*, 538 F.3d 162, 167 (2d Cir. 2008). The defendant "has the burden of showing that he has standing to challenge admission of the seized evidence." *United States v. Sacco*, 436 F.2d 780, 784 (2d Cir. 1971).

### i. Murray Street

Judge Holland determined that Defendant lacks standing to challenge the Murray Street search warrant under the Fourth Amendment because he did not demonstrate "(a) that he had an expectation of privacy that society is prepared to recognize as reasonable, and (b) that he had conducted himself and dealt with the property in a way that indicated a subjective expectation of privacy." ECF No. 50 at 18. Specifically, Judge Holland found that the only evidence proffered by Defendant that he had standing to challenge this search was his declaration that he had keys to Murray Street and thus had the tenant's consent to exclude others. *Id.* Judge Holland found that this was insufficient to establish standing because Defendant failed to explain whether he had ever exercised that right and did not provide any other information from which the court could conclude that he had a legitimate expectation of privacy. *Id.*

In reaching this conclusion, Judge Holland considered the factors set forth in *United States v. Fields*, 113 F.3d 312 (2d Cir. 1997), which guide the Court when determining whether a defendant has a reasonable expectation of privacy in another's apartment. These factors include

whether a defendant "had a key, whether he used the apartment in the owner or lessee's absence; whether he paid rent for the privilege of using the apartment; whether he could bring guests into the apartment; and whether he could come and go as he pleased, even if the owner was not present." *United States v. Boone*, No. 02 CR. 1185, 2003 WL 841088, at *3 (S.D.N.Y. Mar. 6, 2003). Because Defendant's declaration only addressed one factor—that Defendant possessed the keys to the premises—and because that factor alone is insufficient to demonstrate a reasonable expectation of privacy, Judge Holland concluded that Defendant did not have standing to challenge the warrant. ECF No. 50 at 18.

Defendant argues that his declaration establishes that he had the tenant's consent to exclude others from Murray Street and that he possessed the keys. ECF No. 52 at 1. Therefore, he argues that he had the right to exclude others. *Id.* He further argues that an individual may have an interest sufficient to warrant Fourth Amendment protection in a place other than his home. *Id.* at 2. Specifically, he argues that when an individual has permission to use an apartment, is given a key, and uses the apartment in the owner's absence or when he is an overnight guest, he has standing to seek suppression of evidence and to challenge the search. *Id.*

The Court disagrees because even assuming that Defendant is correct that when an individual has permission to use an apartment, is given a key, and uses the apartment in the owner's absence or when he is an overnight guest, he has standing to seek the suppression of evidence, Defendant has failed to show that he meets any one of these criteria. Defendant's declaration states that he "had the right, although not a tenant, to exclude others from 421/423 Murray Street, Rochester, New York 14606 based upon the tenants [sic] consent which was the fact [he] possessed the keys to the location." ECF No. 41 ¶ 4. And that "[a]s such, [he] had a right to exclude others from entering either residence." *Id.* ¶ 5. However, he does not explain how he came to be in

5

possession of the key or if the tenant explicitly gave him permission to use the apartment. Defendant appears to argue that his possession of the key demonstrates that he had permission to use the apartment. Even if the Court were to accept that premise, Defendant has not provided any evidence that he actually used the apartment in the owner's absence. Thus, there is insufficient evidence to suggest that he had permission to use the apartment, was given a key, and uses the apartment in the owner's absence. Additionally, there is no evidence that Defendant was an overnight guest. As such, this argument fails.

Next, Defendant argues that Judge Holland erroneously found that Defendant was required to establish each of the *Fields* factors. Specifically, he argues Judge Holland erroneously found that Defendant was required to "establish that he used the apartment in the owner's absence; whether he paid rent for the privilege of the use; whether he was allowed to bring guests in the apartment and whether he could come and go as he pleased, as if the owner was present." ECF No. 52 at 2. The Court also rejects this argument. Judge Holland did not find that Defendant needed to establish each of *Fields* factors; instead, she identified the *Fields* factors as relevant for determining if Defendant had standing and noted that Defendant had only addressed one of the factors. *See* ECF No. 50 at 18. Judge Holland then found that the only factor Defendant addressed was possession of the key and that Defendant's possession of the key, alone, was insufficient to establish standing. *Id.* at 18.

The Court agrees. As discussed above, the only evidence proffered by Defendant as to his standing to suppress the evidence from Murray Street is his declaration that he "had the right, although not a tenant, to exclude others . . . based upon the tenants [sic] consent which was the fact [he] possessed the keys to the location" and that "[a]s such, [he] had a right to exclude others from entering either residence." ECF No. 41 ¶¶ 4–5. This statement merely establishes that he had

6

access to the premises, and "the mere fact of access to premises alone is insufficient to establish [that] one has a reasonable expectation of privacy a[s] to such premises." *United States v. Fantin*, 130 F. Supp. 2d 385, 392 (W.D.N.Y. 2000). Consequently, Defendant has failed to meet his burden to demonstrate that he has standing to bring a motion to suppress evidence found at Murray Street.[2] Accordingly, the Court ADOPTS Judge Holland's recommendation that Defendant lacks standing to seek the suppression of evidence from Murray Street.

### ii. *Jefferson Avenue*

Judge Holland found that Defendant had standing to seek the suppression of evidence from Jefferson Avenue based on Defendant's declaration stating that he was "the tenant" of Jefferson Avenue. ECF No. 50 at 19. Judge Holland rejected the government's argument that the word "tenant" can have multiple meanings and found that it was a reasonable inference, supported by the evidence of record, that Defendant's use of the term "tenant" meant that he resided at Jefferson Avenue. *Id.* The government "maintains its opposition" to Defendant's standing at Jefferson Avenue, arguing that his assertion that he was a "tenant" at the location is insufficient to establish standing and that Judge Holland fails to cite any evidence of record to support her conclusion. ECF No. 54 at 2.

The Court agrees with Judge Holland that Defendant has standing to seek the suppression of evidence from Jefferson Avenue. While Judge Holland does not cite specific evidence of record beyond Defendant's declaration that he was the tenant, there is extensive evidence that Defendant resided at Jefferson Avenue. The affidavit for the search warrant repeatedly indicates that Jefferson Avenue is Defendant's residence. First, it describes Defendant as "Elijah J. Waddell- Adams, DOB

---

[2] Defendant also argues that Investigator Minurka's search warrant affidavit detailed many of the factors required to establish standing. ECF No. 52 at 3. The Court disagrees. The information in the warrant only establishes that Defendant had access to Murray Street, which, as explained above, is insufficient to establish standing.

7

2/5/1988 of 656 Jefferson Avenue, Rochester, NY 14611." ECF No. 35-5 at 1. Second, it states that "[p]er Rochester Gas & Electric records. . . Adams is the subscriber at 656 Jefferson Ave." *Id.* at 6. Third, it states that "RPD databases show documentation of him residing at [Jefferson Avenue.]" *Id.* Finally, the affidavit explicitly states that Investigator Minurka believes that Defendant "will be in possession of narcotics at his residence at 656 Jefferson Avenue." *Id.* at 7. In addition to the affidavit, Defendant has supplied a cable bill and an RG&E bill listing him as the subscriber at Jefferson Avenue. ECF No. 35-3 at 6.

Based on Defendant's declaration and the evidence described above, the Court concludes that Judge Holland correctly determined that Defendant resided at Jefferson Avenue. Additionally, as Judge Holland explained, one who resides in an apartment has a legitimate expectation of privacy and thus has standing to challenge a search warrant. *See United States v. Babwah*, 972 F.2d 30, 35 (2d Cir. 1992) (finding that a Defendant had "standing to challenge the search because he resided in the house that was searched"). Therefore, the Court agrees that Defendant has standing to seek the suppression of evidence from Jefferson Avenue.

Accordingly, the Court ADOPTS Judge Holland's recommendation that Defendant has standing to seek the suppression of evidence from Jefferson Avenue.

b. **Probable Cause**

Judges who issue warrants must answer the "commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place," *Illinois v. Gates*, 462 U.S. 213, 230 (1983). The law recognizes that probable cause "does not demand certainty but only a 'fair probability' that contraband or evidence of a crime will be found." *United States v. Gaskin*, 364 F.3d 438, 457 (2d Cir. 2004). In reviewing a probable cause determination, the Court gives "due weight to inferences drawn from those facts by resident judges

and law enforcement officers," *United States v. Wilson*, 699 F.3d 235, 242 (2d Cir. 2012) (internal quotation marks and alterations omitted), as "courts recognize that experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not." *Gaskin,* 364 F.3d at 457. Reviewing courts also "must accord considerable deference to the probable cause determination of the issuing magistrate." *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007)); *see also Gates*, 462 U.S. at 236 ("A magistrate's determination of probable cause should be paid great deference by reviewing courts." (internal quotation marks and citation omitted)). Suppression should be the "last resort, not [the court's] first impulse." *Herring v. United States,* 555 U.S. 135, 140 (2009).

       *i. Murray Street*

While Judge Holland determined that Defendant lacked standing to suppress the evidence found at Murray Street, in the alternative, she found that there was probable cause to issue the warrant for Murray Street. ECF No. 50 at 23. At issue is whether Investigator Minurka's affidavits, which were the basis for the issuance of the warrant for Murray Street, were sufficient to establish that evidence of drug crimes could reasonably be expected to be found at 421 and 423 Murray Street. Judge Holland found that there was probable cause to search 421 Murray Street because Investigator Minurka's affidavits explained that 421/423 Murray Street is a two-family residence, that the two apartments share a common access point, that 421 Murray Street was vacant, and that based on his experience and training, drug traffickers often retain a stash supply in the adjacent residence of a two family residence to avoid police discovery. ECF No. 50 at 23. Neither party objected to this finding, and therefore, the Court reviews the R&R's finding on this matter for clear

error. *See Preston*, 635 F. Supp. 2d at 269. Based upon such a review, the Court finds no clear error in Judge Holland's conclusion that there was probable cause to search 421 Murray Street.

As for 423 Murray Street, Judge Holland concluded that Investigator Minurka's affidavits were sufficient to establish probable cause because they explained that three confidential informants had engaged in controlled purchases of drugs from 423 Murray Street and that all three confidential informants "[had] been proven to be truthful and reliable and their information [had] led to past seizures and arrests." ECF No. 50 at 21–22. Defendant objects to this conclusion, arguing that the affidavits were "fatally conclusory in that they lacked information regarding the reliability of the utilized informant." ECF No. 52 at 5–6. Specifically, he argues that the affidavits "failed to identify specific dates, times, costs or quantities with respect to the controlled purchases and failed to detail whether [Defendant] was present in the residence at the time of any of the sales." *Id.* at 6.

Judge Holland addressed all of these arguments in the R&R. As to Defendant's reliability argument, she explained that the lack of information in the record about the reliability of informants is only one factor in the totality of the circumstances. ECF No. 50 at 22. In this case, she found that the confidential informants' statements could be credited because their statements were corroborated in material respects. *Id.* Specifically, she found that Investigator Minurka's affidavits detailed that each of the confidential informants participated in a controlled drug purchase. *Id.* Further, Judge Holland found that the confidential informants were searched for contraband before engaging in the controlled purchases, and each reported that the transaction occurred in the same fashion, thus corroborating one another. *Id.* Additionally, the substances they purchased from 423 Murray Street all tested positive for controlled substances. *Id.* Therefore,

10

Judge Holland concluded that under these circumstances, there was ample probable cause to issue a warrant. *Id.* at 23.

The Court agrees with Judge Holland. As to Defendant's reliability argument, Investigator Minurka explained that the informants "[had] been proven to be truthful and reliable and their information [had] led to past seizures and arrests." ECF No. 35-5 at 5–6. Even if the Court were to assume that this statement was insufficient to establish the reliability of the confidential informants, it would still reject Defendant's argument. As Judge Holland explained, the confidential informants' statements were corroborated in material respects. ECF No. 50 at 22. Each informant walked to the northernmost rear window of 423 Murray Street, rang a doorbell that was tied to a string near the window, and purchased a controlled substance through the window. ECF No. 35-5 at 5–6. The Second Circuit has explained that "[e]ven where an informant has no proven record, if an informant's declaration is corroborated in material respects, the entire account may be credited, including parts without corroboration." *United States v. Wagner*, 989 F.2d 69, 73 (2d Cir. 1993). It has also explained that an "informant's participation in supervised drug purchases is powerful corroborative evidence for purposes of determining probable cause." *Id.* Therefore, because the informant's information was corroborated in material respects, the Court concludes that there is no merit to Defendant's argument about the informant's reliability.

As for Defendant's argument that the affidavit lacked specificity, [a]n affidavit to support a search warrant does not require certainty that the search will be fruitful—rather, the affidavit need only "warrant a man of reasonable caution in the belief" that evidence of a crime will be found. *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion). Consequently, the facts upon which a police officer bases her conclusions need not show that the conclusion is "correct or more likely true than false"; they need only show that "wrongdoing or the discovery of evidence [is]

probable." *Walczyk*, 496 F.3d at 157 (citations omitted). Here, Investigator Minurka's affidavits detailed that three confidential informants engaged in controlled purchases at 423 Murray Street and that the substances they purchased all tested positive for controlled substances. Additionally, each of the informants corroborated each other by reporting that the transaction occurred in the same fashion. This information alone is sufficient to "warrant a man of reasonable caution in the belief" that evidence of a crime would be found at 423 Murray Street. *Brown*, 460 U.S. at 742. As such, the Court rejects Defendant's argument that the affidavit needed to identify specific dates, times, costs or quantities with respect to the controlled purchases and detail whether Defendant was present at the location when the controlled purchases occurred to establish probable cause.

Accordingly, the Court ADOPTS Judge Holland's recommendation that there was probable cause to search Murray Street.

### ii. *Jefferson Avenue*

As for Jefferson Avenue, Defendant argues that Investigator Minurka's affidavits were insufficient to establish probable cause. Judge Holland found that there was probable cause to conclude that Defendant was dealing drugs at 423 Murray Street and that evidence of his drugs crimes would be found at his residence on Jefferson Avenue. ECF No. 50 at 23. She reached this conclusion because (1) Adams was repeatedly observed traveling between his residence at Jefferson Avenue and Murray Street, including on January 8, 2024, the day before the search warrant was issued; (2) he was seen entering Murray Street on the day that one of the controlled purchases was made; (3) he engaged in driving between the two locations in a car registered to another person; (4) he was the utility subscriber for Jeferson Avenue and the police database showed documentation of him residing there; and (5) Investigator Minurka's opinion that evidence would be found at Jefferson Avenue. *Id.* at 23–24. Regarding Investigator Minurka's opinion, she

12

specifically cited his opinion that Defendant was supplying narcotics to 423 Murray Street and that he would be in possession of narcotics at his residence at Jefferson Avenue as well as his opinion that it is common for drug dealers to "secret contraband, proceeds of drug sales and records of drug transactions in secure locations within their residence for ready access and to conceal them from law enforcement authorities[.]" *Id.* at 24.

    Defendant argues that Judge Holland erroneously credited Investigator Minurka's opinion "for reliability even though it failed to establish probable cause." ECF No. 52 at 4. Defendant maintains that the fact that Adams was seen traveling once between Murray Street and Jefferson Avenue, without more, is insufficient to establish probable cause. *Id.* Defendant also argues that Investigator Minurka's opinion that "it is common for drug dealers to secret contraband, proceeds of drug sales and records of drug transactions in secure locations within their residence" is merely boilerplate or form language that is insufficient to meet any legal threshold.[3] *Id.*

    The Court finds Defendant's arguments unpersuasive. Probable cause to search a particular location exists where there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. An officer's experience is "an important factor" for a judge to consider in reviewing a warrant application. *See United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985). Probable cause determinations are frequently upheld in situations where a law enforcement officer provides an expert opinion that drug traffickers often maintain evidence of their crimes at their residences, even in the "absence of any specific information

---

[3] Defendant also cites to *United States v. Williams*, 350 F. Supp. 3d 261 (W.D.N.Y. 2018) to support his argument. *See* ECF No. 52 at 4. In that case, the court questioned whether probable cause existed due to "gaps in the search warrant affidavit" but ultimately declined to determine whether there was probable cause because it concluded that the good faith exception applied. Consequently, the Court does not find it instructive for the purposes of determining whether probable cause exists in this case.

13

connecting suspected drugs to [those] premises." *United States v. Montgomery,* No. 17-CR-6005, 2017 WL 3821262, at *8 (W.D.N.Y. Sept. 1, 2017)

Here, as Judge Holland explained, in addition to Investigator Minurka's opinion that Defendant would be in possession of narcotics at his residence at Jefferson Avenue, Defendant was repeatedly observed traveling between his residence and Jefferson Avenue, was seen entering Murray Street on the day that one of the controlled purchases was made, and was seen driving between the two locations in a car registered to another person. ECF No 35-5 at 5–7. This is sufficient to demonstrate a "fair probability that contraband or evidence of a crime" would be found at Jefferson Avenue. *See Gates*, 462 U.S. at 238. As for Defendant's argument that Investigator Minurka's opinion should be discredited because it is boilerplate or form language, Defendant cites no authority suggesting that the Court must discredit an opinion if it uses boilerplate or form language. Additionally, as explained above, an officer's experience is "an important factor" for a judge to consider in reviewing a warrant application. *See Fama*, 758 F.2d at 838.

Accordingly, the Court ADOPTS Judge Holland's recommendation that there was probable cause to search Jefferson Avenue.

### c. Particularity Requirement

In the R&R, Judge Holland also rejected Defendant's argument that the search warrants failed to "sufficiently describe the places to be searched or items to be seized." ECF No. 50 at 25. She found that Defendant had not identified any way in which the warrants at issue in the case failed to meet the Fourth Amendment's particularity requirement. *Id.* Because neither party objected to Judge Holland's recommendation as to the particularity requirement, the Court reviews the R&R's finding on this matter for clear error. *See Preston*, 635 F. Supp. 2d at 269. Based upon

such a review, the Court finds no clear error in Judge Holland's recommendation as to the particularity requirement and therefore, ADOPTS the recommendation as to the particularity requirement.

### d. Good Faith Exception

The Court also agrees with Judge Holland's determination that, even if the warrants were invalid, the evidence would still be admissible under the good faith exception set forth in *United States v. Leon,* 468 U.S. 897 (1984). Because neither party objected to Judge Holland's recommendation as to the good faith exception, the Court reviews the R&R's finding on this matter for clear error. *See Preston*, 635 F. Supp. 2d at 269. Based upon such a review, the Court finds no clear error in Judge Holland's conclusion as to the good faith exception and accordingly, ADOPTS the recommendation as to the good faith exception.

### III. Motion To Suppress Statements

Judge Holland recommended that Defendant's motion to suppress statements be granted in part and denied in part. Judge Holland concluded that the statements that Defendant made to law enforcement on January 12, 2024, before being interviewed at the Public Safety Building and before being advised of his *Miranda* rights should be suppressed. ECF No. 50 at 29. Neither party objected to that conclusion. As for the statements that Defendant made to law enforcement while being interviewed at the Public Safety Building, Judge Holland concluded that those statements should not be suppressed. *Id.* Defendant objects to Judge Holland's conclusion as to the statements made to law enforcement while being interviewed at the Public Safety Building. ECF No. 52 at 6. The Court discusses each recommendation below.

### a. Statements Made Before the Interview at the Public Safety Building

Because neither party objected to Judge Holland's recommendation as to the statements made before the interview at the Public Safety Building, the Court reviews the R&R's finding on this matter for clear error.[4] *See Preston*, 635 F. Supp. 2d at 269. Based upon such a review, the Court finds no clear error in Judge Holland's recommendation as to the statements made before the interview at the Public Safety Building and therefore, ADOPTS Judge Holland's recommendation as to the statements made before the interview at the Public Safety Building.

### b. Statements Made During the Interview at the Public Safety Building

As for the statements made by Defendant during the interview with law enforcement at the Public Safety Building, Defendant argues that law enforcement officers violated his Fifth Amendment rights by continuing to interrogate him after he invoked his right to an attorney. ECF No. 52 at 8. It is well-settled that police may not interrogate a suspect who has been taken into custody without first advising him of his *Miranda* rights. *United State v. Newton*, 369 F.3d 659, 668 (2d Cir. 2004). These rights include that a defendant "has the right to remain silent, that any statement he makes may be used in evidence against him, and that he has the right to have counsel present." *United States v. Mathurin*, 148 F.3d 68, 69 (2d Cir. 1998) (citing *Miranda v. Arizona*, 384 U.S. 436, 467–71 (2d Cir. 1998)). Here, Defendant seeks the suppression of statements made after he was advised of his *Miranda* rights.

While initially Defendant argued that his statements were not voluntary within the meaning of *Miranda*,[5] he has only objected to Judge Holland's conclusion that law enforcement officers

---

[4] The government stated that it is not seeking to offer any statements made before the interview at the Public Safety Building and therefore did not put forth any evidence at the hearing concerning the statements. ECF No. 54 at 5.

[5] As such, neither party has objected to Judge Holland's recommendation as to the voluntariness of the statements, and the Court therefore reviews the R&R's finding on this matter for clear error. *See Preston*, 635 F. Supp. 2d at 269. Based upon such a review, the Court finds no clear error in Judge Holland's recommendation as to the voluntariness of the statements.

did not violate his Fifth Amendment rights after he invoked his right to counsel. ECF No. 52 at 6. Once a suspect invokes his right to counsel, all interrogation must stop until an attorney is provided or the suspect reinitiates conversation. *Wood v. Ercole*, 644 F.3d 83, 90 (2d Cir. 2011). This important "prophylactic rule [is] designed to prevent police from badgering a defendant into waiving his. . . rights." *Id.* (quoting *Michigan v. Harvey*, 494 U.S. 344, 350 (1990)). The government does not dispute that Defendant validly invoked his right to counsel but instead argues that no further interrogation occurred after he invoked his right to counsel. ECF No. 49 at 6.

Judge Holland agreed with the government. ECF No. 50 at 32. Judge Holland explained that after Defendant invoked his right to an attorney by stating he was going to "get a lawyer for this part," he engaged in a discussion with law enforcement officials about the possibility of cooperation. *Id.* at 31–32. Considering the totality of the circumstances, Judge Holland found that the investigator's conduct after Defendant's invocation of his right to counsel did not amount to impressible interrogation because investigators ceased questioning Defendant about the case and instead began encouraging him to consider cooperating with investigators once he obtained a lawyer. *Id.* at 32. Judge Holland also found that it was the Defendant himself who, without promoting from investigators, restarted the conversation about the charges by stating that "y'all never answered all the questions," and asking what his charges were. *Id.* Further, she found that as the investigator was answering Defendant's question by explaining that they had found two guns, Defendant spontaneously said, "y'all found both guns?" and "damn, how'd y'all find both of them? One of them was in the closet." *Id.* Under these circumstances, Judge Holland concluded that no interrogation occurred after Defendant invoked his right to counsel. *Id.*

Defendant objects to these findings, arguing that the investigators should have known that speaking to Defendant about any facet of the case would likely elicit an incriminating response

17

from him. ECF No. 52 at 8. The test for determining whether the conduct of law enforcement agents amounted to "interrogation" is whether the words or actions of law enforcement agents "were reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 302 (1980). The term "interrogation" includes both express questioning or its functional equivalent. *Id.* at 300–02. It also includes any practice that the "police should know is reasonably likely to evoke an incriminating response from a suspect." *Id.* at 301. In making this assessment, the Court must consider "the totality of the circumstances of the agents' conduct." *United States v. Cota*, 953 F.2d 753, 758 (2d Cir. 1992). The determination of whether a statement is likely to elicit an incriminating response "focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Innis*, 446 U.S. at 301. However, "*Miranda* does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." *United States v. Hayes*, 120 F.3d 739, 744 (8th Cir. 1997) (internal quotations and citations omitted).

      Here, Defendant argues that he was clear that he did not want to answer questions with respect to the investigation without an attorney and that it is clear that any mention of firearms would elicit an incriminating response. ECF No. 52 at 8. The Court disagrees. "'[A] discussion of cooperation is [not] inherently a form of questioning,' particularly where 'the agents [ ] suggest . . . [a defendant] should discuss [the] possibility [of cooperating] with his attorney' and 'merely supplied [the defendant] with general information regarding the crime he was suspected of committing, in response to [the defendant's] own questions.'" *United States v. Sterritt*, 678 F. Supp. 3d 317, 341 (E.D.N.Y. 2023) (quoting *United States v. Guido*, 704 F.2d 675, 677 (2d Cir. 1983)). As Judge Holland explained, after Defendant invoked his right to an attorney, the police merely encouraged him to consider cooperating with investigators once he obtained a lawyer.

18

Then, it was the Defendant himself who, without promoting from investigators, restarted the conversation about the charges. Because the investigators merely suggested that Defendant consider cooperating with investigators once he obtained a lawyer and answered his questions about the charges, the Court concludes that no interrogation occurred after Defendant invoked his right to counsel. And thus, suppression of the statements made during the interview at the Public Safety building is not warranted.

Accordingly, the Court ADOPTS Judge Holland's recommendation as to the statements made during the interview at the Public Safety Building.

## CONCLUSION

For the foregoing reasons, the Court ADOPTS Magistrate Judge Holland's R&R (ECF No. 50). Defendant's motions to dismiss the indictment and suppress physical evidence are DENIED. And Defendant's motion to suppress statements is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

Dated: July 22, 2025
      Rochester, New York

                                            HON. FRANK P. GERACI, JR.
                                            United States District Judge
                                            Western District of New York